**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, et al., PRETERM INFANT NUTRITION PRODUCTSLIABILITY LITIGATION | MDL No. 3026 <br><br> Master Docket No. 22 C 71 |
| This Document Relates to: | |
| GRETCHEN SUDDS, on behalf of and as legal guardian J.T.T.S., a minor v. ABBOTT LABORATORIES, et al. | No. 24 C 12898 <br><br> Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

This case is one of hundreds filed against Abbott Laboratories ("Abbott") and Mead Johnson & Company ("Mead Johnson") and consolidated in multidistrict litigation (MDL) before this court. (*See* No. 22 C 00071 (master docket).) Plaintiffs in the MDL allege that infant formula manufactured by defendants caused preterm infants—including, as relevant here, Plaintiff Gretchen Sudds' infant grandson, J.T.T.S.—to develop necrotizing enterocolitis (NEC). In addition to various product liability cases against Abbott and Mead Johnson, Plaintiff Sudds brings a negligent failure-to-warn claim against Kaiser Foundation Hospitals, Inc. ("Kaiser"), as J.T.T.S. was allegedly provided the defective formula at three Kaiser hospitals (Kaiser Permanente Hayward Medical Center, Kaiser Permanente Oakland Medical Center, Kaiser Permanente San Leandro Medical Center). Invoking diversity jurisdiction, Abbott removed the case to federal court on September 11, 2024, in the Northern District of California (*see* Notice of Removal [1] at 1), and it was transferred to this court as part of MDL 3026 (*see* Transfer Order [37].) Plaintiff now moves for remand to state court on the ground that Kaiser, a citizen of California, is barred from seeking removal by the forum-defendant rule. (*See* Second Mot. to Remand [39] at 1.)[1] Resisting remand,

---

[1] Plaintiff originally filed her motion to remand the case, and accompanying memorandum, while in the Northern District of California. (*See* Mot. to Remand [11] at 1.) Plaintiff incorporates the briefs she filed in that court, and this court refers to those documents in reaching

Abbott maintains that Plaintiff's claims against Kaiser are time-barred, meaning that Kaiser was fraudulently joined to Plaintiff's action and should be disregarded for the purposes of determining jurisdiction. The court agrees. As explained below, Plaintiff's motion for remand is denied.

## BACKGROUND

Plaintiff's motion turns on the question of whether her claims against the Kaiser hospitals are barred by the California statute of limitations. The court here briefly sets forth the relevant allegations and timeline of Plaintiff's claims.

### I. Jurisdictional Facts

The jurisdictional facts set out in Abbott's Notice of Removal are undisputed. Plaintiff and her minor child are citizens of Louisiana and have been for all relevant times during this litigation. (Notice of Removal ¶¶ 24–25.) Abbott, which is incorporated under the laws of Illinois and has its principal headquarters in Illinois, is a citizen of Illinois for the purposes of diversity. (*Id.* ¶ 28.) Mead Johnson Nutritional Company is a wholly-owned subsidiary of Reckitt Benckiser PLC and is a corporation organized under the laws of Delaware with its principal place of business in Illinois; it is a citizen of Delaware and Illinois. (*Id.* ¶ 29.)[2] Mead Johnson & Company is a limited liability company whose sole member is Mead Johnson Nutritional Company; it also, therefore, is a citizen of Delaware and Illinois. (*Id.* ¶ 30.) Kaiser is incorporated in California and has its principal place of business in California; it is a citizen of California for the purposes of diversity. (*Id.* ¶ 31; Compl.

---

a conclusion here. (See Mot. to Remand [11], Abbott Resp. [27], Am. Mot. to Remand [31], Pl.'s Reply [32], Abbott Resp. to Am. Mot. [34], Reply to Am. Mot. [36].)

[2] The court notes that Abbott's assertion of Mead Johnson's citizenship is inconsistent with its own submissions in other notices to remove similar cases—it has elsewhere asserted that Mead Johnson is a citizen of Delaware and *Indiana*, not Illinois. (*See, e.g.*, Notice of Removal [1] in *Drayton v. Mead Johnson & Co.*, No. 24 C 11761, ¶ 17.) Mead Johnson itself asserts that it is a citizen of Delaware and Indiana. (*See* Notice of Removal [1] in *Collins v. Mead Johnson & Co.*, No. 24 C 7140, ¶ 6.) It makes little difference in this case, as Plaintiff is not a citizen of Indiana, Illinois, or Delaware.

[1-2] ¶ 6.)  In her complaint, Plaintiff seeks compensatory damages, medical damages, lost earnings, and suffering clearly exceeding $75,000.  (*See* Notice of Removal ¶ 21.)

## II.     Plaintiff's Claims Against Kaiser Hospitals

J.T.T.S. was born prematurely at Kaiser Permanente Hayward Medical Center in Hayward, California on May 24, 2014.  (Compl. ¶ 10.)  His mother (Plaintiff's daughter) passed away shortly after J.T.T.S's birth.  (*Id*. ¶ 17.)  Acting as her grandson's legal guardian, Plaintiff spoke with Kaiser medical staff and received paperwork detailing J.T.T.S.'s nutrition and feeding plan on May 27, 2014.  (*Id*. ¶¶ 14–15.)  At Kaiser Permanente Hayward Medical Center, on May 28, 2024, J.T.T.S. was first fed Mead Johnson's cow's-milk-based formula, Enfamil.  (*Id*. ¶ 16.)  On June 3, 2024, J.T.T.S. was transferred to Kaiser Permanente San Leandro Medical Center, where he ingested Abbott's cow's-milk-based formula, Similac, on June 11, 2014.  (*Id*. ¶¶ 18–19.)  Two days after ingesting Similac, J.T.T.S. was transferred to Kaiser Permanente Oakland Medical Center, where he was first diagnosed and treated for NEC.  (*Id*. ¶ 20.)  On July 17, 2014, while at the Oakland hospital, J.T.T.S. was fed an Enfamil formula product called "Pregestimil."  (*Id*. ¶ 24.)  On July 22, 2014, J.T.T.S. was diagnosed with "Stage IIIB" NEC.  (*Id*. ¶ 27.)

Plaintiff claims that despite having knowledge that cow's-milk-based formulas created an increased risk of developing NEC in preterm infants, Kaiser failed to warn Plaintiff about the risks of the Enfamil and Similac products (including during the May 27, 2014, interaction with Kaiser staff) and authorized Abbott and Mead Johnson sales representatives to make misrepresentations to health professionals about the products' benefits and safety.  (*Id*. ¶¶ 161–63.)

## III.    Procedural History

For nearly seven years, Plaintiff, then unaware of a connection between cow's-milk-based formula and NEC, took no action to seek a legal remedy for J.T.T.S.'s injuries.  Plaintiff alleges in her complaint that following J.T.T.S.'s NEC diagnosis, Plaintiff asked doctors at the Kaiser hospitals how J.T.T.S. could have contracted NEC.  (*Id*. ¶ 46.)  The Kaiser doctors explained, in

3

response, that NEC was a result of J.T.T.S.'s premature birth; they made no mention of Enfamil or Similac as a potential cause. (*Id.* ¶ 47.) Then, in September 2021, Plaintiff learned of a possible claim against Mead Johnson and Abbott from an attorney's advertisement describing a connection between the manufacturers' products and NEC. At that point, Plaintiff contacted an attorney. (*Id.* ¶ 44.)

On July 5, 2024, Plaintiff filed her complaint in the Superior Court of California, Alameda County, listing Abbott, Mead Johnson, and Kaiser as Defendants. (*See id*. at 1.) Her claim was consolidated in California state court with similar claims against Abbott and Mead Johnson, which are currently proceeding before Judge Ethan P. Schulman in the Superior Court of California, San Francisco County as Judicial Council Coordinated Proceeding No. 5257. (*See* Zeng Decl. [1-1] ¶ 17.) Abbott removed the case to federal court [1] on September 11, 2024, and Plaintiff promptly moved for remand [11] on September 18, 2024.

## **LEGAL STANDARD**

Federal district courts "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005). 28 U.S.C. § 1332(a) grants jurisdiction and allows for removal of a case filed in state court where there is complete diversity between parties and the amount in controversy exceeds $75,000.

There is complete diversity in this case, but the propriety of removal is complicated by two doctrines. First, a defendant seeking removal "must not only demonstrate that the case satisfies the requirements of 28 U.S.C. § 1332(a), but must also clear the 'additional hurdle' of 28 U.S.C. § 1441(b)(2), or the 'forum defendant rule.'" *Morris v. Nuzzo*, 718 F.3d 660, 664–65 (7th Cir. 2013) (quoting *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378 (7th Cir.2000)). Under the forum defendant rule, an action otherwise removable under diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

4

A second relevant doctrine is that of "fraudulent joinder":  under the "fraudulent joinder" doctrine, "an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has 'no chance of success.'"  *Morris*, 718 F.3d at 666 (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)).  In a ruling issued last year, this court concluded that where a forum defendant has been fraudulently joined, a plaintiff may not invoke that defendant's presence to bar removal.[3] Fraudulent joinder is "difficult to establish."  *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009).  A defendant must show that "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant."  *Morris*, 718 F.3d at 666 (quoting *Poulos*, 959 F.2d at 73) (emphasis in original).  But a defendant can meet that heavy burden by demonstrating that a plaintiff's claim against the non-diverse defendant (or, in this case, the forum defendant) is barred by the statute of limitations.  *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 690 (7th Cir. 1998) ("If the time to bring the cause of action had expired, then the district court was correct in dismissing Wright and Knight as fraudulently joined.") (citing *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)).

## DISCUSSION

Abbott argues that Kaiser, the only forum defendant in this case, was fraudulently joined to this action because, as of July 2024 when Plaintiff filed her complaint, her negligent failure to warn claim against Kaiser was time-barred.  (Abbott Resp. at 4–5.)  Plaintiff does not appear to dispute that the applicable statute of limitations for her claim against Kaiser is set out in California's Medical Injury Compensation Reform Act ("MICRA").  (*See* Pl.'s Reply at 5–6.)

---

[3]  This court addressed the matter in *In re Abbott Laboratories Preterm Infant Nutrition Products Liability Litigation*, No. 22 C 2017, 2024 WL 2132425, at *5–6 (N.D. Ill. 2024). As noted there, the fraudulent joinder doctrine classically applies when the addition of a nondiverse defendant obstructs removal.  The Seventh Circuit has not decided the "very close question" of whether removal is obstructed instead by the presence of a forum defendant who is fraudulently joined.  *See Id.* at * 5-6; *Morris*, 718 F.3d at 668.  For reasons explained in its earlier ruling, this court has concluded that it is not.

5

MICRA states, in relevant part, that an action against a healthcare provider on behalf of a minor "shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period." CAL. CIV. PROC. CODE § 340.5. Kaiser's alleged wrongful acts in this case were committed between May and July 2014, and J.T.T.S. turned eight years old on May 24, 2022. Thus, Plaintiff's action was filed well after the statutory period had elapsed.

Plaintiff contends, however, that the statute of limitations must be tolled because "Kaiser made false representations directly to [Plaintiff] which prevented her from bringing the action before the period of limitations had run." (Pl.'s Reply at 5.) Indeed, MICRA specifically provides for tolling of the statute of limitations in all actions brought against medical providers "upon proof of . . . intentional concealment." CAL. CIV. PROC. CODE § 340.5; *see also Young v. Haines*, 718 P.2d 909, 916–17, 41 Cal.3d 883 (1986) (holding that the general tolling provisions in MICRA apply to claims brought by adults and minors alike). But neither Plaintiff's allegations against Kaiser nor the arguments in her briefing support an inference that Kaiser engaged in intentional concealment under California law.

First, Plaintiff suggests that Kaiser intentionally concealed her claim by providing her with "materials related to the safety and benefits of infant formula, including Defendant Manufacturers' products" when "[n]one of these materials mentioned the risk of NEC." (Reply at 6.) Plaintiff further notes that "during her conversation with medical staff at Kaiser . . . on May 27, 2014, at no point did they mention NEC or the risk of NEC." (*Id.* at 7.) But these communications between Kaiser and Plaintiff occurred before J.T.T.S. had consumed cow's-milk-based formula for the first time on May 28, 2014—Kaiser could not intentionally conceal a claim that had not yet arisen. *See Trantafello v. Med. Ctr. of Tarzana*, 227 Cal. Rptr. 84, 88 (Cal. Ct. App. 2d Dist. 1986) (affirming trial court conclusion that "[intentional concealment] would have to have occurred either at or subsequent to the time that the medical procedure was undertaken"). Plaintiff's alternative tolling

6

argument arises from the statements by Kaiser health professionals following J.T.T.S.'s injuries that "J.T.T.S. had gotten NEC because he was born prematurely," without indicating that NEC could be caused by one of Abbott or Mead Johnson's products. (Reply at 7; Compl. ¶ 47.) While these statements may in fact have caused Plaintiff to delay bringing her claim against Kaiser, they also do not rise to intentional concealment.

Interpreting MICRA's tolling provisions, California courts have been careful to distinguish intentional concealment from mere nondisclosure or omission. *Wallace v. Hibner*, 217 Cal. Rptr. 748, 753 (Cal. Ct. App. 5th Dist. 1985) (MICRA's tolling provisions for fraud and intentional concealment "deal with affirmative acts by the health care provider rather than mere omission or exercise of poor judgment.") "[I]ntentional concealment requires something more than a mere continuation of the prior nondisclosure." *Trantafello*, 227 Cal. Rptr. at 88. In *Trantafello*, the plaintiff brought malpractice claims under MICRA after he suffered neck pain and swallowing disorders resulting from disc surgery; the defendant surgeon allegedly failed to disclose that he intended to use a methyl methacrylate implant (an innovative and allegedly risky procedure) rather than a bone graft in the surgery. *See id*. at 86. The plaintiff began to experience swelling and a choking sensation just months after the surgery, but it was not until years later that plaintiff learned (from a different surgeon) that a methyl methacrylate implant had been inserted and was likely the cause of his symptoms. *Id*. Responding to a statute of limitations defense, plaintiff argued that the statute was tolled because defendant surgeon continued to conceal the fact that methyl methacrylate had been used in the surgery and continued to withhold information regarding the risks of the procedure for years following the procedure. *Id*. at 88. Affirming the trial court's conclusion that such facts did not toll the statute of limitations, the court observed that mere nondisclosure before the surgery and continuing afterward, "did not show there was any issue as to an affirmative misrepresentation" and "[p]laintiff conceded in his deposition that [defendant surgeon] never told him anything false about the surgery." *Id*. The same logic applies here. While Kaiser may have failed to properly inform Plaintiff of the increased risk of NEC from the Defendant

7

manufacturers' products (assuming that Kaiser knew of the increased risk)[4]—and this failure might be characterized as negligence—the mere continuation of this omission does not equate to an affirmative misrepresentation or intentional concealment.

Moreover, it is not clear to the court that Kaiser made misrepresentations in response to Plaintiff's questions about J.T.T.S.'s NEC diagnosis. In response to Plaintiff's questions, Kaiser's medical staff told her that the cause was his premature birth. (Compl. ¶ 47.) Plaintiff appears to contend that infant formula was the cause, but she has alleged that "NEC is a devastating disease that is the most frequent and lethal gastrointestinal disorder affecting *preterm* infants" (emphasis added) and bases her claim here on the particular risks that the Defendant manufacturers' formulas pose for preterm infants, not all infants. (*See id*. ¶¶ 28–36.) The statements made by Kaiser medical staff thus appear to be consistent with Plaintiff's allegations. *Cf. Brown v. Bleiberg*, 651 P.2d 815, 821, 32 Cal.3d 426 (1982) (finding triable question of intentional concealment tolling statute of limitations where defendant "misrepresented the nature of the operation he performed on her in order to conceal plaintiff's cause of action").

Lastly, Plaintiff claims that "Kaiser participated in the intentional concealment" perpetrated by the Defendant manufacturers by allowing them to make misrepresentations in the information that they provided to Kaiser's medical staff. (*See* Compl. ¶ 105.) But this allegation does not establish intentional concealment on the part of Kaiser. "While the statute does not expressly say so, it is clear that, in order to toll the three-year clause, the intentional concealment must be by the health-care provider*.*" *Aronson v. Super. Ct*., 236 Cal. Rptr. 347, 348 n. 2 (Cal. App. 6th Dist. 1987). Again, Plaintiff may believe that Kaiser was negligent in allowing Abbott and Mead Johnson to make claims about the risks and benefits of their cow's-milk-based formula, but the

---

[4] This assumption is arguably at odds with Plaintiff's allegations that the Kaiser Defendants themselves were duped by the Defendant manufacturer's false representations concerning their infant formula products. *See infra* pp. 9–10.

8

alleged negligence does not establish that Kaiser's own statements were acts of intentional concealment.

It is worth noting that framing Kaiser's "participation" in the manufacturers' concealment as a basis for tolling appears inconsistent with Plaintiff's other allegations against Abbott and Mead Johnson. The basis for Plaintiff's intentional misrepresentation claims against Abbott and Mead Johnson are that they "intentionally breached their duty through misrepresentations made to consumers like Plaintiff, physicians, and medical staff" and "deceived the public, parents, guardians, physicians, other medical professionals, and medical staff into believing that its products were safe." (Compl. ¶¶ 82, 88, 137.) These allegations place Kaiser and its medical staff among the "deceived," not among the "participants" in intentional concealment. Indeed, in explaining why Plaintiff did not bring her claim earlier, the complaint alleges that "Ms. Sudds was unable to have made the discovery earlier via a reasonable investigation because the Defendant Manufacturers in this litigation," *not* Kaiser, "concealed the wrongful cause of J.T.T.S.'s injuries." (*Id.* ¶ 45.) Such allegations could support a tolling argument against Abbott and Mead Johnson, but not against Kaiser.[5]

In reaching this conclusion, the court makes several observations. First, while Plaintiff brings fraudulent concealment claims against Abbott and Mead Johnson for intentional and negligent misrepresentation in her complaint, she alleges misrepresentation against Kaiser only

---

[5] Some district courts in this circuit, largely in the Southern District of Illinois, have adopted the so-called "common-defense rule," which holds that the availability of substantive defenses (such as statute of limitations) applicable to diverse and non-diverse defendants alike may not serve as the basis for finding that a non-diverse defendant is fraudulently joined. *See Tile Unlimited, Inc. v. Blanke Corp.,* 788 F. Supp. 2d 734, 740–41 (N.D. Ill. 2011); *In Re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Products Liab. Litig.*, 692 F. Supp. 2d 1025, 1034 (S.D. Ill. 2010), *aff'd sub nom. Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011). Notably, the Seventh Circuit did not apply this rule in *LeBlang*, where it held that non-diverse defendants were fraudulently joined on statute of limitations grounds equally applicable to the diverse defendants. *See Bova v. U.S. Bank, N.A.,* 446 F. Supp. 2d 926, 936 n. 5 (S.D. Ill. 2006). In any case, because the statute of limitations defense set by MICRA is not available to manufacturers like Abbott and Mead Johnson, the common-defense rule is not implicated by this ruling.

in her argument for tolling the statute of limitations; she does not plead any affirmative misrepresentation (intentional or fraudulent) claim against Kaiser in her complaint. Far from a pleading error,[6] Plaintiff's complaint is framed around the misrepresentations of Mead Johnson and Abbott, not Kaiser. (*See generally id.* ¶¶ 54–76.) Second, the court takes judicial notice of no fewer than five orders from the concurrent California litigation in which Judge Schulman has dismissed claims against hospitals nearly identical to Plaintiff's on statute of limitations grounds. (*See* Req. for Jud. Notice [28] at 2). In each of those cases, plaintiffs argued that the statute of limitations should be tolled for intentional concealment, and Judge Schulman rejected those arguments for reasons similar to those discussed here. (*See Dameron* Order [28-1] at 5–10*; Sutter Bay* Order [28-2] at 4–14; *University of California* Order [28-3] at 8–15*; Dignity Health* Order [28-4] at 5–8; *Port City* Order [28-5] at 5–8.)[7] While these opinions are not binding on this court's fraudulent joinder analysis, they confirm that Plaintiff would have no genuine chance of recovery against Kaiser when these same arguments would inevitably come before Judge Schulman on remand. Finally, the court notes that at the time that Plaintiff discovered she had a claim and engaged an attorney in September 2021, more than six months remained before J.T.T.S.'s eighth

---

[6] In her amended motion to remand, Plaintiff suggests that it would be improper to find fraudulent joinder where Plaintiff "could salvage [her] claim through the amendment of the operative complaint." (Am. Mot. to Remand at 6–7.) Plaintiff cites several cases, including *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992), *Chau-Barlow v. Provident Life & Accident Ins. Co.*, No. 5:16-cv-01694-ODW (KKx), 2016 WL 5921061, at *2 (C.D. Cal. 2016), and *Padilla v. AT & T Corp.*,697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009), which all support the rule that a finding of fraudulent joinder is improper where a state court could conceivably grant a plaintiff leave to amend to cure defects in the complaint. But these cases refer to situations where a plaintiff could conceivably amend a complaint to add more facts, *see Padilla*, 697 F. Supp. 2d at 1159 ("Even if Plaintiff did not plead facts sufficient to state a claim . . . Defendants have not established that Plaintiff could not amend her pleadings and ultimately recover . . . .") —they are not persuasive in cases, like this one, where a plaintiff has affirmatively pleaded sufficient facts to show that the claim is untimely.

[7] In the *Sutter Bay* Order, Judge Schulman tolled the statute of limitations for one plaintiff, Ms. Diaz, where Diaz alleged that the defendant hospital's medical staff told her affirmatively that "there is no known cause" of NEC and actively denied a connection between NEC and formula products. (*Sutter Bay* Order at 13.) These statements, Judge Schulman held, constituted intentional concealment of Diaz's claim. (*Id.*) No such allegations appear here.

birthday and the statutory deadline set by MICRA. Plaintiff and her attorney had time to determine the statute of limitations under MICRA and commence a timely action against Kaiser. Assuming such a claim would have merit, it is now untimely.

## **CONCLUSION**

Plaintiff's motion to remand this case is denied.

ENTER:

Dated: February 25, 2025

_____
REBECCA R. PALLMEYER
United States District Judge